**William M. KEENAN, Jr.,**
**Plaintiff-Appellant,**

v.

**Larry D. BENNETT, Commissioner,**
**Alabama Board of Corrections, et**
**al., Defendants-Appellees.**

**No. 79–3105**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

March 10, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

William M. Keenan, Jr., pro se.

Thomas R. McAlpine, Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.

Before GEE, RUBIN and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Appellant William M. Keenan, a state prisoner, filed suit under 42 U.S.C. § 1983 alleging due process violations in the manner in which his "good time" status was revoked. The defendants moved for dismissal. The matter was referred to a magistrate, who treated the complaint as an application for a writ of habeas corpus and recommended dismissal. The district court accepted the recommendations and dismissed the action. We reverse and remand.

On September 5, 1978, Keenan, a prisoner at Alabama's Kilby Correctional Facility, applied for Incentive Good Time (IGT) status pursuant to Act 182, 1976 Ala. Acts, and an Alabama Department of Corrections regulation. Participation in the IGT program, which is limited to "inmates whose behavior and industriousness merit such award,"[1] entitles a prisoner to two days of good-time credit for each day he serves. The administrative body charged with reviewing IGT applications approved Keenan's, and he received IGT credit from October 4, 1978, until January 12, 1979. On the latter date, the administrative body rescinded Keenan's IGT status. Keenan appealed to defendant Dale Howard, the warden at Kilby, who told him that he would be returned to IGT status as of January 22, 1979, but that he would not receive the October-January credits.[2]

Keenan sought declaratory relief, compensatory and punitive damages, an injunction "which prohibits defendants, their agents and employees from removing, suspending or recinding [sic] any of plaintiff's previously earned statutory good behavior credit except as proscribed [sic] by law, rule, regulation or policy approved by the Court,"[3] and other relief not relevant here. Keenan's complaint expressly denied that he sought restoration of good-time credit.

■ The magistrate, in arriving at his recommendation, reasoned that under *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the petition, albeit brought under § 1983, must be considered a habeas corpus matter. As such it is subject to the requirement of exhaustion of state remedies, 28 U.S.C. § 2254(b). The magistrate nonetheless proceeded to reach the merits of Keenan's constitutional claim. Citing *Holtzinger v. Estelle*, 488 F.2d 517 (5th Cir. 1974), *Grossnickle v. Alabama*, 415 F.2d 864 (5th Cir. 1969), and *Quirke v. Beto*, 373 F.2d 739 (5th Cir. 1967), he said, "The law is clear in this jurisdiction that the awarding of jail good time is a matter of state law, not a federal constitutional issue." He also said that to "require exhaustion of state remedies in this case and then to have Keenan returned here, if he is unsuccessful in getting relief in a state court,

---

**1.** Alabama Department of Corrections Administrative Regulation 420, Paragraph 2.

**2.** An IGT participant may not be removed from the program absent (1) a finding by the disciplinary board that the participant was "guilty of a violation," (2) a "due process action . . . which specifies the reason for the hearing," (3) the commission by the participant of a new criminal offense, (4) revocation of the participant's parole or (5) the participant's loss of good-time while on parole, Alabama Department of Corrections Administrative Regulation 420, Paragraph 5. The defendants do not contend that any of these conditions was satisfied. They claim that the body that reviews IGT

applications inadvertently approved Keenan's application without first securing the approval of the warden at Kilby. Such an action by the reviewing body is inconsistent with Alabama Department of Corrections Administrative Regulation 420, Paragraph 6. Keenan, on the other hand, claims the warden told him that his IGT status had been rescinded because he was suspected of breaking prison rules. We do not now attempt to resolve this dispute.

**3.** This request, as we interpret it, involves good-time credit earned before October 4, 1978, and after January 22, 1979.

is wasteful of Keenan's time and of judicial energy." Because the court did not specify otherwise, the dismissal operates as an adjudication on the merits, Fed.R.Civ.P. 41(b), and is thus with prejudice.

We conclude that Keenan's complaint must be treated as an application for a writ of habeas corpus and dismissed for failure of exhaustion of state remedies. In *Preiser, supra*, the Supreme Court held that suits seeking injunctive restoration of good-time credit are to be considered habeas corpus actions. Attempts to plead under § 1983 profit nothing. Keenan was careful in his complaint to disavow any intention of seeking restoration of good-time credit, apparently hoping to circumvent *Preiser*. He claims his case is governed by *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in which Nebraska inmates challenging their prison's entire disciplinary process were permitted to maintain a limited § 1983 action for declaratory and monetary relief.[4] Keenan would have us find that his suit is a challenge to the conditions of his confinement, cognizable under § 1983, and not a challenge to the fact or duration of his confinement, which must be brought as a habeas corpus action. He claims that *Preiser*, as qualified by *Wolff*, proscribes only the restoration of good-time credit under § 1983.

The very contentions now raised by Keenan were recently rejected in *Johnson v. Hardy*, 601 F.2d 172 (5th Cir. 1979). Johnson alleged that he was not afforded due process in disciplinary proceedings that resulted in the revocation of his good-time credit. He sought restoration of good-time credit and trusty status, declaratory relief, compensatory and punitive damages and "an injunction prohibiting the defendants from denying appellant his procedural rights." The court said his action was:

> in reality a challenge to the duration of his confinement. As such, it may not properly be urged in a § 1983 suit. . . . [Under *Wolff*, T]he issue of the general validity of prison disciplinary procedures

may be considered separately from the question whether the good-time credits of a particular inmate should be restored. . . .

> Johnson does not attempt to launch a broad due process challenge to the Texas prison disciplinary system. . . . He contends only that he lost his good-time credits and trusty status after a constitutionally invalid proceeding. His claims for declaratory and monetary relief arise solely as a result of this single allegedly defective hearing. Consequently, the district court did not err in construing this suit as a habeas claim which could not be maintained for failure to exhaust state remedies.

601 F.2d at 173, 174.

Like Johnson, Keenan complains only of the method by which his good-time credits were lost and does not launch a broad challenge to the validity of the prison's entire disciplinary proceeding. His case is indistinguishable from *Johnson* and is controlled by its holding.

We do not agree, however, with the conclusion of the magistrate and the district court that the awarding of jail good-time credit may not raise a constitutional issue. It may do so. Revocation by state-prison authorities of good-time credit must be measured against the requirements of the Fourteenth Amendment's Due Process Clause, *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975; *Preiser*, 411 U.S. at 487, 93 S.Ct. at 1835.

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in

---

4. The inmates in *Wolff* had also sought restoration of good-time credit. The Supreme Court held that this relief could not be granted in a § 1983 action.

every conceivable case of government impairment of private interest." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

418 U.S. at 557, 94 S.Ct. at 2975.

■ Two of the cases cited by the magistrate, *Quirke, supra,* and *Grossnickle, supra,* antedate *Preiser* and *Wolff* and their precedential value is to be considered in that light. To the extent these two very brief opinions would suggest that revocation of good-time credit does not pose a constitutional issue they are not consistent with *Preiser* and *Wolff.* The third case cited by the magistrate, *Holtzinger, supra,* is inapposite. In *Holtzinger* the plaintiff sought to compel the Texas authorities to grant good-time credit for time he served in prison in California, time spent on parole and good-time acquired in California. Because Texas had never granted Holtzinger good-time credit, his interest in it, unlike Keenan's interest in his IGT status, had not risen to the level of a liberty interest protected by the Fourteenth Amendment. The decision in *Holtzinger* is consistent with *Preiser* and *Wolff,* but is inapplicable to the case at bar.

The dismissal a quo, under Rule 41(b), would foreclose any further action by Keenan. We reverse. The case is remanded to the district court for dismissal without prejudice to Keenan's right to seek relief in the state court system and, thereafter, any relief which may then prove appropriate.

REVERSED AND REMANDED.